IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Darryl K. Sturkin, | ) | C/A No. 0:14-1574-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

  This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Darryl K. Sturkin, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded.

## SOCIAL SECURITY DISABILITY GENERALLY

  Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform his past relevant work; and

(5)   whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



## ADMINISTRATIVE PROCEEDINGS

In June 2007, Sturkin applied for DIB, alleging disability beginning April 15, 2005. Sturkin's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held via video conference on October 8, 2009, at which Sturkin, who was represented by Christi B. McDaniel, Esquire, appeared and testified. The ALJ issued a decision on November 18, 2009 finding that Sturkin was not disabled. (Tr. 84-91.)

The Appeals Council granted Sturkin's request for review and issued an Order on March 22, 2010 vacating the hearing decision and remanding the case for further proceedings.

A second hearing was held via video conference on August 18, 2010, at which Sturkin appeared and testified. Sturkin continued to be represented by Christi B. McDaniel, Esquire. The ALJ issued a decision on September 23, 2010 finding that Sturkin was disabled during the closed period from April 15, 2005 to March 28, 2007, with medical improvement thereafter. (Tr. 11-22.) The Appeals Council denied Sturkin's request for review, and Sturkin appealed to the United States District Court.

In December 2010, during the pendency of his appeal, Sturkin filed a new claim for DIB, alleging disability beginning September 24, 2010. Sturkin's new application was denied initially, upon reconsideration, and in the ALJ's opinion issued July 9, 2012. (Tr. 1004-14.) On August 21, 2012, upon motion of the Commissioner and with consent of Sturkin's counsel, the district court vacated the ALJ's September 23, 2010 decision and remanded Sturkin's claim for further consideration. (Tr. 1019.) Specifically, this matter was remanded for a *de novo* hearing and new

decision regarding Sturkin's eligibility for disability benefits and the court ordered the Appeals Council to instruct the ALJ to:

> (1) reevaluate the opinion of Dr. Triana, and explain the reasons for the weight accorded to the opinion, with specific references to the medical evidence of record; (2) further consider Plaintiff's residual functional capacity on the updated record, citing specific evidence in support of the assessed limitations; and (3) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base, ensuring that such testimony is consistent with the vocational classifications contained in the Dictionary of Occupational Titles[.]

(Id.) The Appeals Council issued an Order on October 17, 2012 associating Sturkin's two claims and remanding the matter for further consideration. (Tr. 1022-24.)

A hearing was held on November 21, 2013 at which Sturkin appeared and testified and continued to be represented by Christi B. McDaniel, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on February 18, 2014 finding that Sturkin was disabled during the closed period from April 15, 2005 to March 28, 2007, with medical improvement thereafter. (Tr. 907-22.)

Sturkin was born in 1959 and was forty-five years old on his alleged disability onset date. (Tr. 184.) He has a high school education and has past relevant work experience as a service operator at a paper mill, and a security guard. (Tr. 200, 205.) Sturkin alleged disability due to back and neck problems, high blood pressure, acid reflux, and depression. (Tr. 199.)

In applying the five-step sequential process, the ALJ found that Sturkin had not engaged in substantial gainful activity since April 15, 2005—the date Sturkin became disabled. The ALJ also determined that from April 15, 2005 through March 28, 2007—the period during which Sturkin was under a disability—Sturkin's degenerative disc disease of the cervical and lumbar spine with a history of fusion and discectomy, degenerative joint disease of the left shoulder with partial tendon

and rotator cuff tears, and high blood pressure were severe impairments. However, the ALJ found that, from April 15, 2005 through March 28, 2007, Sturkin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, from April 15, 2005 through March 28, 2007, Sturkin had the residual functional capacity to

> perform a range of sedentary work activity as defined in 20 CFR 404.1567(a). Specifically, the claimant was able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. The claimant was unable to climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs and reach overhead with the left arm; was unable to stoop, kneel, crouch, or crawl; and could not maintain attention and concentration sufficient to perform even unskilled work on a sustained basis for a full 8 hour work day and 40 hour work week due to pain and side effects of medication.

(Tr. 912.) The ALJ found that, from April 15, 2005 through March 2007, Sturkin was unable to perform any past relevant work, and that considering Sturkin's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Sturkin could perform from April 15, 2005 through March 28, 2007. Therefore, the ALJ found that Sturkin was disabled from April 15, 2005 through March 28, 2007.

However, the ALJ found that medical improvement occurred as of March 29, 2007—the date the claimant's disability ended—and that this medical improvement was related to Sturkin's ability to work because there had been an increase in Sturkin's residual functional capacity.[2] The ALJ found that, beginning March 29, 2007, and through the date last insured of June 30, 2012, Sturkin retained the residual functional capacity to

---

[2] The ALJ found that Sturkin had not developed any new impairment or impairments since March 29, 2007; accordingly, Sturkin's severe impairments since March 29, 2007 were the same as those present from April 15, 2005 through March 29, 2007.



> perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour day. The claimant was unable to climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead with the left arm; and could frequently balance.

(Tr. 916.) The ALJ found that, as of March 29, 2007 and through the date last insured, Sturkin remained unable to perform any past relevant work, but that considering Sturkin's age, education, work experience, and residual functional capacity, beginning March 29, 2007 there were jobs that existed in significant numbers in the national economy that Sturkin could perform.[3] Therefore, the ALJ found that Sturkin's disability ended on March 29, 2007.

Thereafter, Sturkin appealed the ALJ's decision to the district court.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

---

[3] The ALJ also noted that, since March 29, 2007, Sturkin's age category changed to that of an individual closely approaching advanced age.



make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**DISCUSSION**

Although Sturkin presents several arguments in support of his position that the ALJ erred in failing to find that Sturkin was disabled prior to his date last insured, upon review of all of the arguments and the record in this matter, the court finds that remand is warranted for further consideration of the evidence immediately surrounding and after Sturkin's date last insured. As part of Sturkin's arguments, he asserts that this evidence renders the ALJ's decision unsupported. The Commissioner does not address this argument or evidence.

It is not apparent from the record that on remand the ALJ considered the evidence immediately surrounding and after Sturkin's date last insured in evaluating the opinions of Dr. Mark Triana, Sturkin's treating orthopedic specialist,[4] and in ultimately finding that from March 29, 2007 through June 30, 2012 (Sturkin's date last insured) Sturkin was not disabled. Although not specifically mentioned by either party, the court in Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012), reiterated that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." Bird, 699 F.3d at 340. Further, "retrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final

---

[4] The opinions regarding Sturkin's functional ability that appear to be at issue are dated March 28, 2007; June 17, 2009; and June 4, 2012. (Tr. 545, 896, 1203.) The ALJ found that the restrictions in those opinions, beyond that of a capacity for light work as described in the residual functional capacity assessment, were overly restrictive and were not supported by the weight of the evidence of record, including Dr. Triana's own treatment notes. (Tr. 918-19.)



condition of the claimant with his earlier symptoms." Id. at 341 (internal quotation marks and citation omitted). Moreover, "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." Id. at 342. Thus, the Commissioner "must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be reflective of a possible earlier and progressive degeneration." Id. at 345 (internal quotation marks and citation omitted).

 Here, the court is unable to determine whether substantial evidence supports the ALJ's conclusion that Sturkin was not disabled as of his date last insured, June 30, 2012. The record reveals that on March 1, 2012, Dr. Triana stated that Sturkin "still has quite a bit of a problem with his left shoulder," but he also stated that "[h]e does fairly well with an occasional injection in his shoulder . . . ." (Tr. 1210.) On May 10, 2012 (a little less than two months before Sturkin's date last insured), Dr. Triana stated that Sturkin returned for a two-month follow up "after receiving an injection at last [appointment] which only helped for some time. He is complaining of pain in the posterior shoulder blade and into his neck returning. He reinjected his left subacromial space. He is aware that arthoscopic evaluation of his shoulder is most likely warranted as he hasn't received long term relief from conservative care of injections, medications and physical therapy. . . ." (Tr. 1208.) On August 9, 2012 (over a month after Sturkin's date last insured), Dr. Triana stated that Sturkin received a repeated injection for his left shoulder and that he did well with left shoulder injections every two to three months. (Tr. 1206.) On October 11, 2012 (three and one half months after Sturkin's date last insured), Dr. Triana stated, at a follow up appointment for his left shoulder, that Sturkin "has been getting periodic injection with little relief. We attempted a subacromial decompression back in 2009 but due to narrow vocal cords, were unable to intubate him. He has



since seen an ENT at MUSC and says that it is sage for him to proceed with surgery." (Tr. 1204.) Dr. Triana also ordered an updated MRI of Sturkin's left shoulder. On November 29, 2012, Dr. Triana stated that he had reviewed the new MRI of Sturkin's left shoulder, indicating further degeneration from previous imaging, and "as we have known for many years[] still requires surgical correction. Given his narrow vocal cords, and our difficulty intubating him back in 2009, I would like to send him to Dr[.] Woolfe so he could have his surgery at one of the larger hospitals in case he has a recurrence of issues." (Tr. 1257.) On February 7, 2013, Dr. Triana indicated that due to scheduling difficulties, he is referring Sturkin to Dr. William Greer and that he thinks "it is time to proceed with surgical intervention on [Sturkin's] shoulder." (Tr. 1255.) On February 12, 2013, Sturkin reported to Dr. Greer a long history of left shoulder pain, described his current difficulties, and indicated that "he initially has done fairly well with conservative care, but his condition has deteriorated *over the last year or so*." (Tr. 1266) (emphasis added). Dr. Greer assessed a left shoulder high-grade partial rotator cuff tear, pain in the shoulder joint, and primary localized osteoarthritis in the shoulder region. Dr. Greer stated that he agreed with the "whole of treatment rendered up to this point. Unfortunately for this gentleman, his condition is deteriorating with conservative care. I think he is a candidate for operative intervention primarily for that of subacromial decompression, rotator cuff repair versus debridement and distal clavicle excision." (Tr. 1267.) On May 20, 2013, Dr. Thomas Chambers performed a left shoulder arthroscopy with subacromial decompression, arthroscopic mumford procedure, and arthroscopic cuff repair. (Tr. 1269-70.) On August 14, 2013, Dr. Chambers released Sturkin to return to work with restrictions of no pushing, pulling, excessive lifting in excess of 10 pounds and no overhead lifting. (Tr. 1301.) Finally, on November 11, 2013, Dr. Chambers indicated that he believed Sturkin had reached

maximum medical improvement with a thirty-four percent left shoulder impairment, and he recommended that Sturkin follow up with Dr. Triana for his back and have an functional capacity evaluation to determine permanent work restrictions after seeing Dr. Triana. (Tr. 1294.)

In this case, the above evidence permits an inference of linkage with Sturkin's pre-date last insured condition. See Bird, 699 F.3d at 341, 345. As stated above, the ALJ did not expressly discuss any of this evidence and therefore it is unclear whether it was considered, and failing to consider this evidence would constitute legal error under Bird. Moreover, the court observes that when this matter was previously remanded by the district court in part for further consideration of Dr. Triana's opinions, the Appeals Council specifically observed that the medical records at that time showed that Sturkin was scheduled to undergo surgical repair of his shoulder. (Tr. 1022.)

The court is cognizant of the number of hearings associated with these applications that have been conducted in this matter; however, this matter must be remanded for further consideration of this evidence and assessment of this evidence by the ALJ in the first instance. This is especially so because it is unclear at what point, if at all, Sturkin's left shoulder condition limited him to the point of disability. See Crider v. Harris, 624 F.2d 15 (4th Cir. 1980) (finding remand for an award of benefits was warranted where the individual's entitlement to benefits was "wholy established" on the state of the record); Smith v. Astrue, No. 3:10-66-HMH-JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) ("Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (citing Edwards v. Bowen, 672 F. Supp. 230, 237 (E.D.N.C. 1987)); cf. Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with



instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A."). For example, Sturkin's condition may have deteriorated to the point that he became disabled during the relevant time period, was disabled for the entirety of the relevant time period, or became disabled after the relevant time period. Thus, as in Bird, remand for further consideration of this evidence is warranted.

## ORDER

Based on the foregoing, it is hereby

**ORDERED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 14, 2015
Columbia, South Carolina